## Mentzer *against* Menor.

A judicial sale of land does not divest it of the lien of a recognizance entered
into to secure the widow's interest, in a proceeding in partition in the orphans'
court, either as to the amount payable to the widow during her lifetime, or to
the heirs after her death.

ERROR to the common pleas of *Franklin* county.

Joseph Menor and wife, for the use of Jacob Welsh, executor of
Catherine Mentzer, against the administrator of Daniel Mentzer,
with notice to Barbara Snowberger, terre-tenant.

*Scïre facias sur recognizance* and special verdict.

David Mentzer died in 1818 intestate, seised in fee of a large
real estate; a partition and valuation were had of the same, and
in October 1818, Daniel Mentzer, son of the intestate, took purpart
third at the valuation, and entered into recognizance to the widow,
Catherine, and the other heirs, for their respective shares, and
amongst them to Joseph Hone and Elizabeth, his wife, and *Joseph*
Menor and Catherine, his wife; said Elizabeth and Catherine being
daughters of said David Mentzer, the intestate.

Daniel Mentzer, the son, died intestate. In 1827, Joseph Hone
and wife issued a *scire facias* against John Bittenger, administrator
of Daniel Mentzer, on said recognizance, with notice to terre-ten-
ants, for the first part payable, and obtained judgment. A *fieri
facias* was issued on this judgment, at the suit of Hone and wife,
and levied on the tract of land taken by said Daniel at the valua-
tion.

A *venditioni exponas* was issued to August term 1828, and the
same was sold at sheriff's sale on the 13th of August 1828, to Jo-
seph Hone, the plaintiff, for 800 dollars.  Auditors were appointed,
and the said purchase-money, raised by said sheriff's sale, was
apportioned amongst the recognizance creditors of said Daniel.

Catherine, the widow, received a portion in her own right, for what was before due her as widow, and also as assignee of Joseph Menor and wife, on the recognizance of said Daniel to said Menor and wife.

Catherine Mentzer, widow, died in March 1834, having made her will and appointed Jacob Welsh her executor. A *scire facias* issued to August term 1838, on the recognizance of said Daniel Mentzer to Joseph Menor and wife, for the use of Catherine Mentzer's executor, against J. Bittinger, administrator of Daniel Mentzer, with notice to terre-tenants of said land, sold at sheriff's sale to Joseph Hone in 1828, and since sold and conveyed by said Hone and wife to Barbara Snowberger, and for the purpose of recovering the money payable at the death of the widow to Menor and wife.

The court below (Thompson, president) rendered a judgment for the plaintiff.

*Chambers* and *McCulloh*, for plaintiff in error, cited 1 *Penn. Rep.* 312; 4 *Watts* 397.

*Brady* and *Denny, contra*, cited 2 *Penn. Rep.* 355; 3 *Rawle* 127, 183; 1 *Watts* 259.

The opinion of the Court was delivered by

HUSTON, J.—The case stated, raises the question, whether in case a man dies intestate leaving lands and children and a widow, and the land is found not suitable for division, and is appraised and taken by one of the children at the appraisement, and he enters into recognizance to pay the interest of one-third to the widow during her life, and the principal to the other heirs at her death, and also enters into another recognizance to pay the other heirs their respective shares of the other two-thirds within one year; and the child to whom the land is decreed is sued on this last recognizance, or for some other personal debt due by himself, and the land is levied on and sold, the purchaser at such sheriff's sale takes the land discharged from the recognizance given, to secure the interest to the widow on one-third of valuation, and to pay the principal of that one-third to the other heirs at her death?

The decisions of this court in Willard *v.* Morris, 2 *Rawle* 56; and in M'Lanahan *v.* Weyant, 1 *Penn.* 112; Fisher *v.* Esseg. 2 *Rawle* 160; Corporation *v.* Wallace, 3 *Rawle* 127; in all of which it was settled that a sale by a sheriff of land in execution, passed it to the purchaser clear of incumbrances from mortgages, judgments, or other liens, except in certain cases specified or alluded to in all those cases, would seem to have settled the law as a general rule, and to an extent sufficient for this case, to have settled the exceptions to the rule. It was with some surprise we heard those decisions spoken of as an innovation of the practice in this state. With

[Mentzer v. Menor.]

the exception of a particular section of the state where a much re-
spected gentleman presided as judge, and those lawyers in that dis-
trict who, from the weight of the judge's character, adopted his
opinions without examination, there was no difference of opinion
in the bar or on the bench, in the eastern part or middle of the
state. When Judge Brackenridge, who had practised only in the
west, came on the bench of the Supreme Court, and intimated,
as he often did, that a purchaser of land at sheriff's sale, held sub-
ject to all prior liens, whether by recognizance, mortgage, or judg-
ment, it was a matter of great surprise, and the subject of frequent
conversation among the profession, and I never heard but one
opinion as to what the law had been and was. No decision of any
court gave countenance to the sale being subject to lien. At length
some of those who had been, and were lending money on mort-
gage, began to talk of a mortgage prior to the judgment, on which
the land was sold, being an exception. The late chief justice, who
seldom gave an opinion beyond the case before him, once or twice
spoke of the subject as not settled by judicial decision. His opinion
was, however, well known to all who knew much of him. The
subject, although much talked about, was never acted upon in court
in any but one way. At length in Guerny, Executor, *v.* Alexander,
14 *Serg. & Rawle,* a decision was made that a purchaser at she-
riff's sale held subject to prior judgments; this was promptly reversed
in the supreme court, and there was no longer any doubt about the
opinion of the chief justice. I refer the younger members of the
profession to Corporation *v.* Wallace, 3 *Rawle* 127, as to this whole
subject, the rule and its exceptions.

It was, however, agreed here as if what was there and in many
other cases stated as exceptions, had once been the rule, and this
led to the preceding observations.

They fully established that a sheriff's sale gave the lands to the
purchaser discharged from prior liens. This, however, was stated
as the general rule of law, but if it was not stated in all the cases,
it was in most of them, that there were exceptions, and the interest
of a widow in the estate of an intestate for her third of the interest
of the valuation money, was often mentioned as one of the excepted
cases.

In M'Lanahan *v.* Weyant, 1 *Penn. Rep.* 111, the general rule
is stated, that a sheriff's sale divests all liens, except in cases de-
pending on special and peculiar circumstances.

In Corporation *v.* Wallace, 3 *Rawle* 127, the whole subject was
fully considered, and the law so settled as not to be considered open
to future dispute, but it is there said by the chief justice: " where
an incumbrance cannot for any cause be satisfied out of the pur-
chase money, it remains a charge on the land." And again, in p.
130, speaking of the case of Repple *v.* Repple, he says, " the nature
of the incumbrance (a provision for the support of two idiot daugh-
ters during their lives) was such as to preclude it from being de-
ducted from the purchase-money."

[Mentzer v. Menor.]

It has been argued here, that a sale on a judgment obtained on a recognizance given, by the child taking the intestate's lands at the appraised value, to the other heirs for the two thirds of the appraised value, payable in one year, differs from a sale on any other suit or judgment. I do not recognise any difference (except that enacted by act of assembly since 1831, in favour of the first mortgage) between a judgment based on a recognizance, on simple contract, so far as relates to the effect of a sheriff's sale in giving the property clear of prior liens. But if there is or was any difference, the very case has occurred and been decided on by this court. See Medlar *v.* Allenbaugh, 2 *Penn. Rep.* 355, which puts the matter on the true principle, viz., the positive direction of the act of assembly, that where the land is taken at the appraisement by any one of the heirs, the one-third of the price shall remain charged on the land, and the interest be paid to the widow during her life, and the principal to the heirs after her death. And it decides further, that so positive is this provision of the law, that it remains in force, although the orphans' court direct a bond to be given to the widow, instead of taking a recognizance to secure to her the interest of one-third of the purchase-money, and the payment of the principal of that one-third to the other heirs after her death. To have provided that the purchaser at sheriff's sale should pay the principal of this one-third at the time of the sale, and yet continue to pay the widow the interest for her life, is so strange and preposterous, that nothing but the most express terms could induce us to suppose any law so intended.

It will be found that this subject has been considered in this court repeatedly, Pidrack *v.* Bye, 2 *Penn. Rep.* 183, and Fisher *v.* Kean, 1 *Watts* 259, where it is said this lien can only be disturbed by a mortgage or judgment which attached in the life of the decedent, and which overreaches all rights which did not accrue until after his death; and repeats the doctrine in Medlar *v.* Allenbaugh, that it must remain a lien during the widow's life, and be paid by the child to whom the land was allotted, or by his heirs or assigns, to the other heirs at her death.

In Knaceb *v.* Essig, 2 *Watts* 282, the same doctrine is laid down, explained and enforced. And in 4 *Watts* 397, the law and reason of it is again recognized, explained, and enforced.

It is time this matter, I mean the continuing lien of the widow's dower, or rather interest in one-third of the appraised value of the land of a deceased intestate, was at rest. If it is not swept away by the debts of the decedent, incurred in his lifetime, it cannot be destroyed by any acts of the heirs after the lands have been valued and taken at the appraisement. The widow may release her interest, and the heirs their interest, but neither her interest nor that of the heirs in this third, can be swept away and applied to pay the debts of the child who took the land at the appraisement, but in whose hands it was, by the clearest expressions, subject to pay the

[Mentzer v. Menor.]

widow the interest on one-third of the valuation, and to pay that third to the other heirs after her death.

Judgment affirmed.