## Mellott v. Hayden

*Albert Foster,* for plaintiffs.
*Thomas B. Steiger,* for defendant.

KELLER, J., August 9, 1972.—This action in assumpsit was commenced by the filing of a complaint on November 3, 1971. In response to preliminary objections an amended complaint was filed December 15, 1971. An answer containing new matter was filed January 3, 1972, and a reply to the new matter on January 18, 1972. By stipulation of counsel, it was agreed the trial should be without jury. A pretrial conference was held on April 14, 1972. Trial was held on April 25, 1972. By agreement of counsel the court reviewed the pleadings, pretrial briefs and pretrial conference memorandum in the light of the evidence presented at trial, and on May 4, 1972, submitted specific questions of law to counsel so that they might submit briefs on the same by May 15, 1972, for the guidance of the court. For various reasons defendant's brief was received on May 23, 1972, and plaintiff's on June 8, 1972.

This is a suit by the administrators of an estate to recover the difference between the price bid for a tract of real estate by defendant at public sale, and the amount actually received for the same real estate at a second sale, and after defendant's unilateral rescission of the sale. In addition, plaintiffs seek to recover expenses incurred by reason of defendant's rescission.

Defendant asserts as his defenses to the plaintiffs' claim:

## I

The descriptions of the real estate in the deed to plaintiffs' decedent, and in the deed that plaintiffs proposed to deliver to defendant, did not close. Therefore, plaintiffs could not convey a marketable title and defendant had an absolute right of rescission.

## II

The real estate in question was landlocked and without a right-of-way of record for ingress and egress. Therefore, the title was not marketable and defendant had an absolute right of rescission.

## III

Plaintiffs may not recover the difference between the high bids at the two sales, because counsel for the estate announced at the second sale that access to the real estate was by permission of the adjoining owner. Therefore, the terms of the second sale were less advantageous than the terms of the prior sale, and it would be impossible to determine a proper measure of damages.

## FINDINGS OF FACT

1. Letters of administration were on September 10, 1970, issued to Samuel Mellott and Cleo Mellott on the estate of James A. Mellott, who died intestate February 4, 1968.

2. A certain tract of decedent's real estate was exposed to public sale on the steps of the Court House in McConnellsburg, Fulton County, Pa., on June 19, 1971, at 11 a.m., pursuant to advertisement.

3. Defendant arrived prior to the auction sale, heard the terms of sale announced and in competitive bidding was the high bidder at $16,100.

4. Prior to the bidding, counsel for plaintiffs, in response to an inquiry, publicly announced in a clearly audible tone that "the right-of-way is questionable."

5. Defendant did not hear the announcement referred to in finding of fact no. 4, despite the fact that he was standing within six to eight feet of counsel.

6. Defendant bid on the real estate exposed at public sale believing it to be the "home farm" of decedent, rather than the tract he in fact bid upon.

7. Immediately after the sale defendant delivered to plaintiffs his check in the amount of $1,610, representing the down payment.

8. On June 20, 1971, defendant in the company of Samuel Mellott, one of the administrators, viewed the land in question and walked over it. He saw but one means of access from the public road and that was a clearly defined right-of-way in the center of the tract.

9. On the day of the view defendant learned that the visible right-of-way was merely by permission of the owner of the land lying between the real estate in question and a public road.

10. The real estate bid upon by defendant is unimproved mountain land not adjoining any public road.

11. Defendant could neither find nor see any other access ways to the land and concluded he would be unable to subdivide the tract because it was "landlocked."

12. Defendant notified Samuel Mellott on the day of view that he was going to stop payment on his down payment check, because of the lack of a right-of-way, and on June 21, 1971, he did so.

13. Defendant intended by stopping payment on the check to rescind the contract of sale and "to close out the transaction."

14. On June 22, 1971, counsel for plaintiffs notified defendant by letter that settlement for the real estate was tentatively set for July 14, 1971, in his office, and requested that he be advised if that date was not convenient.

15. A fiduciary's deed with the customary fiduciary warranty was prepared and plaintiffs were ready, willing and able to settle on July 14, 1971. Defendant did not appear for settlement.

16. On August 19, 1971, counsel for plaintiffs notified defendant that his effort to rescind the sale was not accepted by the estate, that the real estate would be exposed to sale again and that a demand would be made upon defendant for any difference between defendant's bid at the first sale and the sale price at the second sale. Counsel also forwarded to defendant a copy of the "public sale notice" of the second auction sale to be held on September 4, 1971, at the Court House in McConnellsburg, Fulton County, Pa.

17. On September 4, 1971, the real estate was again exposed to sale, and at this sale counsel for plaintiffs announced that one of the rights-of-way was questionable and a private right-of-way. The real estate was sold to the highest bidder for the sum of $10,000.

18. The estate incurred expenses of $48.64 in connection with defendant stopping payment on his check, re-advertising the sale and procuring the services of an auctioneer for the second sale.

19. Plaintiffs, therefore, claim the sum of $6,184.64 from defendant, plus interest.

20. Defendant admitted all of the allegations of plaintiffs' complaint.

21. The description in the deed of plaintiffs' decedent dated April 25, 1935, and recorded in Fulton County Deed Book 49, Page 39, is by metes and bounds, monuments and reference to adjoining owners.

22. The same description was used in the deed plaintiffs were prepared to tender to defendant.

23. The description for the real estate in question did not close, nor did the two tracts join each other.

24. Subsequent to the second sale a survey of the

real estate here in question was made using the monuments and adjoiners of the 1935 deed and it was determined the boundary of the entire tract closed, and contained 101.5 acres.

25. At both sales plaintiffs' terms of sale had indicated they would convey "approximately 100 acres of timber and mountain land."

26. Defendant did not inquire into the accuracy of the description in the 1935 deed, or in the deed proposed to be tendered to him, until sometime after his unilateral rescission of the contract of sale, and the issue of the inaccuracy of the description was not clearly raised until trial of the matter.

27. The right-of-way extending in an easterly direction from the public road to the approximate center of the West boundary line of the land here in question is a right-of-way that Samuel Mellott was given permission to use only for the purpose of removing timber from the real estate.

28. A second visible right-of-way extends in an easterly direction from the paved road, past a house, over a bridge and enters the land here in question at the southernmost point of the West boundary line.

29. A third visible right-of-way extends from the public road in an easterly direction on both sides of vestiges of a wire fence, across two bridges and enters onto the land here in question on the North boundary line.

30. None of the three rights-of-ways are passable with vehicles other than four-wheel drive type vehicles. They are grass covered and grown up, but the visible width is approximately six feet eight inches.

31. The evidence of the usage of the northernmost right-of-way as a means of access to the land in question, rather than to other properties is not clearly proven by the evidence.

32. The usage of the southernmost right-of-way as a means of access to the lands in question for farming purposes prior to World War I, and for lumbering operations is established.

33. Defendant did not prove a material difference in the quality of the cautionary warning given at the first and second sale by counsel for the estate concerning the questionable nature of the center right-of-way.

34. The administrators petitioned the Orphans Court Division of the Court of Common Pleas to waive the filing of additional security as provided by section 511 of the Fiduciaries Act of April 18, 1949, P. L. 512, sec. 541, 20 PS §320.541; and an order waiving the same was signed on May 19, 1971.

## DISCUSSION

Defendant by his pleading admissions, his admissions at the pretrial conference and his admissions at the beginning of trial, conceded all of the material facts essential to prove plaintiffs' claim. Defendant then alleged various facts which he contends, if proven, are legal justification for his rescission of the contract and excuse him from responding in damages. Essentially, this is the common law plea of confession and avoidance. Defendant, therefore, has the burden of proving the facts alleged by a preponderance of the evidence, and convincing the court that at least one of his alleged defenses is legally sufficient if he is to prevail.

Defendant contends his high bid at the first sale created an executory contract for the purchase of the real estate. From this obviously correct contention, he proceeds to his next contention that in the absence of a clear expression to the contrary there is an implied warranty that the vendors will tender a marketable title. In support of this contention he cites the words

of Chief Justice Sharswood in Swayne v. Lyon, 67 Pa. 436, 439 (1871):

"It has been well and wisely settled that under a contract for the sale of real estate, the vendee has the right not merely to have conveyed to him a good but an indubitable title. Only such a title is deemed marketable; for otherwise the purchaser may be buying a lawsuit, which will be a very serious loss to him both of time and money, even if he ultimately succeeds. Hence it has been often held that a title is not marketable where it exposes the party holding it to litigation . . ."

Defendant urges that the marketable title doctrine so eloquently expressed by Chief Justice Sharswood is applicable to the instant case, despite the fact that he conceded he did not and could not expect plaintiffs to tender to him a deed containing any covenants of warranty other than the customary fiduciaries' warranty that they have done nothing to adversely affect the title to the real estate. In other words, if we understand defendant correctly, he is claiming that at an estate auction sale there is an implied warranty of marketable title that protects the high bidder until settlement, at which time that implied warranty disappears and his sole recourse is under the extremely limited warranty given by the fiduciary.

In support of this theory defendant has cited in addition to Swayne v. Lyon, supra, Restatement, Restitution, §24, pages 109-110; 7 Williston, Contracts, Chapter 32, §923, pages 673-674 (1957 ed.) and Villanova Law Review, Vol. 9 (1964), page 654. None of the authorities cited and available to this court, including the Swayne case, deal with estate auction sales.

Plaintiffs oppose defendant's marketable title argument, contending the doctrine of caveat emptor applies from the moment the property is knocked down to the

high bidder by the auctioneer, because as administrators they warrant only that they have done no act to encumber the estate. No applicable cases were cited in support of the argument.

The caveat emptor argument seems to find strong support in the early law of Pennsylvania: Bashore v. Whisler, 3 Watts 490 (1835); Fox v. Mensch, 3 W. & S. 444 (1842); King v. Gunnison, 4 Pa. 171 (1846); Vandever v. Baker, 13 Pa. 121 (1850). However, upon a careful study of these early cases it becomes immediately evident that in estate sales of real estate at that time, the sale was not complete until a return was made and the sale confirmed by the Orphans' Court. In the King, Fox and Vandever cases, supra, the Supreme Court of Pennsylvania after asserting the caveat emptor sale softened the impact of the rule by noting that the purchaser was not without remedy, for he could prior to confirmation apply to the Orphans' Court to set the sale aside. Thus, we must conclude our appellate courts recognized a right of timely rescission in a purchaser at an estate sale.

Defendant in further support of his contention that there is any implied warranty of marketable title between the time of the auction and settlement, argues any other conclusion would destroy the public auction as a means of selling real estate of a decedent. He points out that any other conclusion would require all parties interested in bidding to hire attorneys to make title searches before the auction and before they knew whether they were going to be the successful bidder. Obviously, requiring such presale expenses would have a chilling effect on auctions and would reduce substantially the number of competitive bidders.

Since defendant has not supplied us with any direct authority for his position that there is an implied warranty of marketable title, as such, and our independent

research has disclosed no such doctrine, we are unwilling to hold that such a warranty will be created by implication under circumstances such as here prevail. We do, however, find defendant's contention, that a purchaser has a right to rescind an executory contract of sale, where there is a serious cloud on the title raising a strong possibility of exposing the vendee to litigation, is persuasive. We also find the statements in King v. Gunnison, supra; Fox v. Mensch, supra; and Vandever v. Baker, supra, to the effect that a vendee acting with diligence is not without legal remedy supports defendant's contention.

We, therefore, conclude a high bidder on real estate at an estate auction sale does have a right to rescind his executory contract prior to settlement, if he can sustain the burden of proving a substantial risk of being exposed to litigation by reason of a cloud on the title of said real estate.

Having concluded there are legal circumstances under which a vendee such as defendant may properly rescind his executory contract, we now turn to the question whether defendant under the facts of this case may rescind.

Defendant points to the established facts that the description of the real estate in the deed to plaintiffs' decedent, and in the deed prepared for tendering to him, were inaccurate because they did not close and because the two described tracts did not have a common boundary line permitting them to join. Defendant urges the court to find that the defective description constituted a cloud on the title, subjecting him to the substantial risk of litigation, and therefore he was justified in his unilateral rescission.

Since defendant testified he was not aware of any defect in the description at the time he stopped payment on his hand money check, and considered the

rescission complete, the court would be justified in refusing to consider this contention on the basis that it was an afterthought. However, we do not elect to thus avoid the issue.

Defendant's complaint as to the description is on the facts of the case without merit, for the evidence established that by the use of monuments and adjoiners set forth in the descriptions, the boundary of the real estate was readily identified and the property located. "Calls for natural or permanent objects will generally control conflicting calls for the courses and distances, and the latter will yield to the former in determining boundaries": 5 P. L. Encyc. Boundaries, 574.5, §9. ". . . the object of a description in a deed is to identify the land, and such description need not be technically accurate, but must be sufficiently precise to enable a surveyor to locate it. Thus, a conveyance of land in a particular place is not necessarily vitiated by a misdescription of the premises, and where, by a rejection of the false and impossible part of a description which is repugnant to the general intention of the instrument, an adequate description will remain, the false part should be rejected and effect given to the deed": 12 P. L. Encyc., Deeds, 10, §5.

In concluding our comments on this aspect of the defense, we feel it is appropriate to note that no evidence was introduced by defendant that he ever made any demand upon plaintiffs or counsel for the estate to have the property surveyed or the boundary lines established. Had he done so, his belated concerns could have been put at rest. It should also be noted defendant introduced no evidence that the defective descriptions exposed him to any risk of litigation.

As an alternate ground for rescinding the contract, Mr. Hayden contends the real estate has no means of access from the public road. He bases this contention

on the facts that when he viewed the land he saw only the roadway built by Samuel Mellott with permission of the intervening owner, and that his counsel at some date following his stopping payment could not find any recorded deed of right-of-way.

Defendant has cited no law in support of this legal theory that a landlocked condition is grounds for rescission, and we have been unable to find such authority. However, before we reach that legal question defendant must sustain the burden of proving the fact that the real estate was landlocked. This we conclude he did not do, for his evidence of what he did not see is clearly rebutted by plaintiffs' evidence that there is one and perhaps two visible wagon wide roadways, equipped with bridges presently useable by four-wheel drive vehicles extending from the public road over the intervening owner's land to the land in question.

Defendant, in response to plaintiffs' evidence of the existence of the other means of access, argues that plaintiffs' evidence was not sufficient to prove that either or both of the roadways are in fact legal easements created by prescription or implication and thus forever open to him. This we do not believe is a legitimate issue in the case at bar, because defendant has not sustained his burden of proving the real estate landlocked, and that he was in fact exposed to any serious risk of litigation. Had he introduced evidence of an adverse position taken by the intervening landowner, his contention would have been far more meritorious.

We also understand defendant to argue that the roadways identified by plaintiffs' witnesses are not adequate to permit him to subdivide the real estate, and therefore, he could not make full use of the land. Since there was no evidence that Mr. Hayden was misled into believing the land in question was particularly

suitable for development or subdivision, the contention warrants no further consideration.

We dismiss defendant's contention that he was entitled to rescind the contract on the ground that it was landlocked, because he has failed to prove the fact alleged.

Defendant's final argument is that if he did not have a right to rescind, he still is not responsible for the difference between the price he bid at the first sale and the lesser price bid at the second sale, because plaintiffs announced less favorable terms at the second sale than at the first. This is a correct statement of the law in Pennsylvania, but the burden of proving different terms at the two sales is upon defendant. As indicated by the findings of fact defendant did not sustain his burden and therefore his contention must be dismissed.

## CONCLUSIONS OF LAW

1. Plaintiffs and defendant entered into a valid agreement for the sale by plaintiffs to defendant of the real estate in question for the sum of $16,100.

2. Defendant refused without legal justification to purchase the real estate.

3. Plaintiffs properly and without a change of terms exposed the real estate at public sale and did sell it for the $10,000.

4. Plaintiffs incurred expenses of $48.64 by reason of the second sale.

5. Plaintiffs suffered damages in the amount of $6,148.64 as a result of defendant's breach of contract.

## VERDICT

The court finds for plaintiff in the amount of $6,148.64 with interest from July 14, 1971.

Exceptions are granted defendant.