## Snyder *against* Markel.

Under the provisions of the act of the 1st of April 1811, the orphans' court were not authorized to grant an order for the sale of the real estate of deceased, for the payment of debts, until after the settlement of a final administration account of the personal assets by the executors or administrators: but if such order be granted, and the sale made and finally confirmed, it vests a good title in the purchaser; and the validity of the proceedings of the orphans' court cannot be inquired into collaterally.

ERROR to the common pleas of *Northumberland* county.

Joseph B. Snyder and John P. Snyder against John Markel. Ejectment for a house and lot in Milton.

John A. Snyder, the father of the plaintiffs, died seised of the lot in controversy, having first made a will, by which he devised it to the plaintiffs, and appointed Joseph Bound, Adam Steitzel and Philip H. Snyder, his executors. In 1818, these executors petitioned the orphans' court to grant them an order for the sale of the real estate of the testator, including the house and lot in dispute, for the payment of debts. Annexed to their petition was this statement:

" Estate of John A. Snyder, deceased, Dr.

| | | |
|---|---|---|
| Amount of debts paid by executors, - - | $10,500 |
| Do.    of debts yet due, - - - - | 11,500 |
| | $22,000 |
| Cr. estate by amount of inventory, - - | 19,000 |
| | $3,000 |

The court granted the order and the sale was made, returned and confirmed, to Solomon Ludwig. Under this title the defendant claimed. There was proof of fraud in the making of the sale on the part of the executors, out of which two questions arose: Whether the orphans' court had jurisdiction of the subject before a final administration account of the personal assets had been settled? And whether the defendant, being an innocent purchaser, without notice of the fraud, would be affected by it?

Lewis, president, ruled both these points for the defendant, on

the ground that the validity of the decree of the orphans' court was not the subject of a collateral inquiry, and that the defendant purchased upon the faith of it, and without notice of the fraud.

*Donnel*, for plaintiff in error, cited the act of 1st of April 1811, 4 *Rawle* 174; 6 *Watts* 294; 2 *Stark. Ev.* 805; 1 *Penn. Rep.* 251; 3 *Cowen* 206; 2 *Peters* 163; 7 *Serg. & Rawle* 172; 2 *Binn.* 92.

*Hepburn*, for defendant in error, cited 3 *Serg. & Rawle* 234; 4 *Dall.* 451; 6 *Binn.* 496; 12 *Serg. & Rawle* 171; 11 *Serg. & Rawle* 432.

The opinion of the Court was delivered by

KENNEDY, J.—Both parties on the trial derived their claim to the land in controversy, from John A. Snyder, who died seised of a fee simple estate therein. The plaintiffs claimed as the devisees of John A. Snyder, and the defendant derived his claim to the land from Solomon Ludwig, who bought it at a sale thereof made by the executors of John A. Snyder, under a decree of the orphans' court, of the county in which the land is situate. The only question necessary to be decided is, had the orphans' court jurisdiction over the subject in the way it was presented to them, and were they authorized to make the order of sale? The act of the 1st of April 1811; after reciting, that " it frequently happens that on the final settlement of the accounts of the estates of testates and intestates, the personal assets are found to be deficient, and the balance is decreed to be and remain chargeable on the real estate of the testator or intestate" enacts " in all cases after the final settlement of an administration account in the orphans' court, if it shall appear that there are not sufficient assets to pay and satisfy the balance appearing to be due and owing from the estate of the deceased, it shall be lawful for the said court, on the application of the executors or administrators, or any others interested therein, to make an order that so much of the real estate of which the deceased was seised or possessed at the time of his decease, shall be sold by the executors or administrators, as in the judgment of the court shall be sufficient to satisfy such balance." The objection here is, that there was no final settlement made by the executors of the testator, of their administration account, previously to the sale and the decree of the orphans' court, under which it was made; and of course it could not appear from such account that there were not sufficient assets to pay the debts, or that any balance thereof remained unpaid for want of assets, which was indispensably necessary in order to give the orphans' court cognizance of the matter, so as to make an order for the sale. It is obvious from the terms of the act, that the legislature were solicitous to make provision for the payment of the debts of deceased persons out of their real estates, when it appeared that the personal assets were all exhausted and proved insufficient

for that purpose. They, however, as it would seem, were also desirous, at the same time, that the real estate should not be sold, except where the personal assets were insufficient to pay the debts, and then only so much of it as should be sufficient to pay the balance of the debts remaining unpaid after an appropriation of all the personal assets to the discharge thereof. With a view, then, that this might be made to appear to the court, before any order for a sale of the real estate or any portion of it should be made, a final settlement of the account of the assets of the testator or intestate was required to be made by the executors or administrators. This seems to be the mode directed by the act, for satisfying the court that a sale of the real estate is requisite in order to pay the balance therein stated, of the debts of the deceased, remaining still unpaid for want of assets. The orphans' court is a court of record in this state, and has a very general, and indeed exclusive jurisdiction over the estates of deceased persons, and can by no means be considered a court of inferior jurisdiction, and therefore bound to observe and adhere to the letter of the statute, in all its judicial proceedings, or otherwise the judgments or decrees made therein, will be considered *coram non judice.* Mr. Justice Duncan, in delivering the opinion of this court, in M'Pherson *v.* Cunliff, 11 *Serg. & Rawle* 429, in order to show that a sentence or decree of the orphans' court is conclusive, applies to it, the general rule of our law, "that where any matter belongs to the jurisdiction of one court so peculiarly, that other courts can only take cognizance of the same subject, incidentally and indirectly, the latter are bound by the sentence of the former, and must give credit to it." Had it not been for the principle of this rule, and the application of it to that case, it would have been difficult, if not impossible, to have sustained the decree of the orphans' court, and the sale of the property in question, in that case made under it. It was made under the authority of the 19th and 20th sections of the act of the 19th of April 1794, which authorised the orphans' court, in case of an intestate debtor, dying seised of lands or tenements, and leaving lawful issue, but not personal estate sufficient to pay his debts and maintain his children, upon the administrator's exhibiting a true and perfect inventory, and a conscionable appraisement of all the intestate's personal estate whatsoever, as also a just and true account, upon his solemn oath or affirmation, of all the intestate's debts, which shall then have come to his knowledge, and upon its appearing to the court that the intestate's personal estate would not be sufficient to pay the debts and maintain the children, until the eldest of them should attain to the age of twenty-one years, or to put them out to be apprentices, and to teach them to read and write, then, and in every such case, and not otherwise, to allow the administrator to make public sale of so much of the lands, as the said orphans' court, upon the best computation they could make of the value thereof, should judge necessary for the purposes aforesaid.

[Snyder v. Markel.]

Although the act of 1794, in order to authorise the orphans' court to decree a sale, required that there should be lawful issue of the deceased in their minority, an appraisement of the personal estate, and an account upon oath or affirmation of all the intestate's debts exhibited; yet the sale was decreed in M'Pherson *v.* Cunliff, without any of those things having existed or been done, and held good. M'Pherson *v.* Cunliff, as well as many other cases, establishes beyond all controversy, that it is not the kind of proof directed to be given by the act of assembly to the court, for the purpose of showing that according to its provisions, there ought to be a sale of either a part or the whole of the real estate, which gives the court jurisdiction over the subject, and makes the decree binding, and the sale under it valid.   It is a proceeding *in  rem*, and it seems to be the condition of the estate, which brings it within the jurisdiction of the court.   Under the act of 1794, the late owners having died seised of the estate and intestate, was all that was requisite in order to give the orphans' court cognizance of an application for the sale of it, 11 *Serg. & Rawle*, 430; and under the act of 1811, the orphans' court has jurisdiction given to it over the estate where the owner has died testate as well as intestate.   This latter act has directed, as we have seen, that, before an application shall be made for a sale of the real estate to be made for the purpose therein mentioned, a final settlement of the administration account of the assets of the deceased, shall be made in the orphans' court, in order, as it is obvious, that the court may judge whether there be a call for it or not.   But this court having exclusive jurisdiction of the matter, is to judge whether such account has been settled or not, as often as an application shall be made under the latter act for a sale of the real estate, and their decision thereupon, whatever it may be, according to the rule laid down above, will be conclusive, unless appealed from; and, though erroneous, cannot be set aside or avoided in any collateral suit or proceeding.   The acts of 1794 and 1811, are *in pari materia;* and the court that is to act under either being the same, the principle by which the jurisdiction of the court is to be tested, must be the same in both   In this case, the executors upon applying for the sale, exhibited a statement in writing signed and sworn to by them, showing the amount of the personal assets, and what had been paid by them in discharge of debts due from the deceased; and showing also a balance of the debts remaining, after all the assets should be applied to the payment of them, of three thousand dollars.   Had an appeal been taken from the decree of sale, founded upon this exhibit, to this court, which would have brought the question of its sufficiency directly before us, it most probably would have been held insufficient, and the decree of the orphans' court reversed upon that ground.   But in this collateral suit such questions cannot be raised.   The orphans' court having jurisdiction over the subject-matter of the decree, though we think it was obtained upon evidence far from being as satisfactory, and

[Snyder v. Markel.]

as well adapted, to guard against doing injustice to the devisees or owners of the real estate, as a final settlement of the administration account would have been, it must be considered conclusive. It is much to be regretted, however, that decrees should be made, authorizing the sale of real estate, without paying particular attention to the directions of the acts of assembly made in such cases, because great injury frequently arises by departing from them. And it is painful to witness it without being able to extend the least relief.

Judgment affirmed.