VALLE et al., Appellants, vs. FLEMING et al., Respondents.

1. An administration sale is void, when it appears affirmatively that the publication of notice, required by statute, previous to the order, could not have been made.

2. An administration sale, not approved by the court, is void; and the approval must appear from the record, although it need not be in express terms.

3. Where an administration sale, which the record shows to have been made for the payment of debts under the eighth section of article three of the act concerning executors and administrators (R. C. 1835,) is void for want of notice, it cannot be sustained on the ground that it might have been made under the second and third sections of the same article, which required no notice.

4. If an administration sale is void, it will not be rendered valid against the heirs, by the fact that they receive the benefit of the proceeds, especially when they are minors.

5. The fact that, after the death of one of two administrators, letters of administration are granted to the survivor and another, without any express revocation of the former letters, will not avoid a sale made by the last administrators.

### Appeal from Madison Circuit Court.

This was an action by six of the seven heirs of C. C. Valle, to recover an undivided interest in the Mine La Motte tract of land. The record showed the following facts:

Valle *v.* Fleming.

In 1838, C. C. Valle died, owning an undivided one third of the said tract. Lewis F. Linn and E. F. Pratte owned the other two thirds. On the 19th of December, 1838, letters of administration on Valle's estate were granted to B. St. Gemme and E. F. Pratte. On the 21st of the same month, at a special term, the administrators presented to the county court a petition, stating that the personal estate of the deceased was insufficient to pay his debts, and that his interest in the Mine La Motte tract was subject to a mortgage, which would fall due in the February following. The petition stated that there was filed with it a statement of the real and personal property of the deceased, and of his indebtedness ; but the only lists which appear upon the record are lists of the debts due to and from the estate. In justification of their haste, the administrators stated in their petition, that they had consulted with the friends and relatives of the deceased, who advised them to make the application. They prayed for an order authorizing them to sell, at private or public sale, the whole or so much of the said real estate as would pay the debts of the deceased. On the same day, the court made an order, reciting that a petition had been presented, accompanied by a true account of the administration, of the debts due to and by the deceased, and of the real and personal estate and other assets, and authorizing the administrators to sell, at private sale, the whole or so much of the real estate as should be necessary to pay the debts, provided the same be not sold for less than three-fourths of its appraised value. The entire tract was appraised at $100,000. The administrators sold one half of the interest of C. C. Valle, or one-sixth of the whole tract, to Fleming, Lamb and Chauncey, of Philadelphia, for the sum of $16,666⅔. (Pratte and Linn, the other owners, sold one half of their respective interests at the same time to the same parties.) No report of this sale appears upon the record of the proceedings, nor is there any entry showing that the sale was approved by the county court. On the 24th of April, 1839, Pratte and St. Gemme, as administrators, and Pratte and Linn, as owners, joined in deeds con-

veying to each of the three purchasers, one undivided sixth of the entire tract. This deed was in the form of an ordinary warranty deed, recited the order of sale of Valle's interest, dated December 21, 1838, but contained no recitals of the proceedings under the order. Pratte and Linn warranted the title for themselves, and Pratte and St. Gemme warranted it as administrators of C. C. Valle.

At the May term, 1843, of the county court, the administrators presented another petition, reciting that, pursuant to the order of December 21, 1838, they had sold at private sale the one equal undivided half of the interest of C. C. Valle in the Mine La Motte tract, for the sum of $16,666 66, upon a credit of ——— months, to some gentlemen of Philadelphia. They stated the necessity for a sale of his remaining interest, and prayed for an order. This petition does not appear ever to have been acted upon.

Before this time, two decrees had been rendered in suits commenced by Robert T. Brown and Francis Valle respectively, against the widow, administrators and minor heirs of C. C. Valle, by which the title to three fifty-sixths of the Mine La Motte tract was vested in the said Brown and Francis Valle, and it was also decreed that the administrators should account to Brown and F. Valle for the one half of their respective interests, which had been sold by the administrators with their assent, under the order of December 21, 1838.

On the 19th of January, 1844, St. Gemme having died, new letters of administration on the estate of C. C. Valle were granted to Melanie Valle and E. F. Pratte, the latter being one of the former administrators. There was no express revocation of Pratte's former letters.

On the 18th of September, 1847, the administrator and administratrix presented another petition, reciting that they had formerly sold an equal undivided one-sixth of the Mine La Motte tract, which sale had been reported to the court, and that the proceeds had been insufficient to pay the debts of the estate. They prayed for an order for the sale of their intestate's re-

maining interest in the tract, being one-sixth, less three fifty-sixths. At the November term, 1847, after publication of notice, an order of sale was made, according to the prayer of the petition. A sale was made under this order to Thomas Fleming, which was approved. On the 10th of February, 1848, the administrators executed a deed to Thomas Fleming, by which, after reciting the order of sale and the proceedings thereunder, they conveyed to him "all the interest which the said C. C. Valle had in the Mine La Motte tract, at the time of his death, less three fifty sixths." The deed previously recited that Valle's interest was one sixth, less three fifty-sixths. The defendants claimed under these two administration sales, and the court declared the law in their favor. The plaintiffs appealed.

*Noell* and *Frissell*, for appellants. The first sale is void, because there was no publication of notice previous to the order. 9 Cranch, 64. 2 Comstock, 118. 3 Comstock, 103. 7 Hill, 431. 9 Cowen, 26. 12 Wend. 473. 3 Barb. 341. 7 Barb. 39. 5 Haywood, 394. 12 Ohio, 271. 8 Metcalf, 355. 9 Shepley (Me.) Rep. 321. 13 Shepley, 226. 6 N. Hampshire, 370. 6 Howard (Miss.) Rep. 106, 269. 1 Smedes & Marsh. 351. 2 Smedes & Marsh. 326. 6 Smedes & Marsh. 259. 7 Smedes & Marsh. 449. 9 Mo. Rep. 362. 16 Mo. Rep. 437. 12 Mo. Mep. 63. 9 Mo. Rep. 785. 12 Mo. Rep. 178. 1 Hill (N. Y.) 130. The order of publication cannot be presumed, when it is not shown by the record. 11 Howard (U. S.) 360. No presumption can be indulged in that the law has been complied with, as was done in the case of *Grignon's lessee* v. *Astor*, 2 Howard, because it here appears affirmatively that it could not have been complied with. The order of sale was made two days after the grant of letters. If it be said that the plaintiffs cannot take advantage of the irregularity in a collateral proceeding, it is replied that the very matter of which they complain is, that they had no opportunity to contest the matter in the county court, or to appeal, and no writ of error lies in such cases. R. C.

1835, p. 63, §2. Ib. p. 518, §2. 9 Mo. Rep. 362. The case of *Overton* v. *Johnson*, 17 Mo. Rep. is not in point. There, the question whether the want of notice would avoid the sale is expressly reserved. Another objection to the first sale is, that there was no report or confirmation, which renders it void under the statute. R. C. 1835, p. 53, §20, 21, 22. 2 Smedes & Marsh. 326. The deeds of the administrators are inoperative to convey any interest of the deceased in the land, as they purport only to convey the interest of the administrators, with covenants for title. 6 Connecticut, 258, 373. As to the second sale, it is void, because the letters of administration granted to Melanie Valle and E. F. Pratte were void, the first letters to Pratte and St. Gemme remaining in full force. *Post* v. *Caulk,* 3 Mo. Rep. 12 Mo. Rep. 63.

*T. T. Gantt* and *R. M. Field,* for respondents. 1. The county court having jurisdiction of the subject matter, the want of an order of publication previous to the order of sale is not a defect which can be taken advantage of in a collateral proceeding. *Overton* v. *Johnson,* 17 Mo. Rep. 442. *Frye* v. *Kimball,* 16 Mo. Rep. 9. *Snyder* v. *Markel,* 8 Watts, 416. *Grignon's lessee* v. *Astor,* 2 Howard's (U. S.) Rep. 319. 4 Wend. 436. 11 S. & R. 429. 2. The proceedings under the order of sale were approved by the county court at the May term, 1843, as shown by the record. 3. This sale was under section 3 of article 3 of the administration act of 1835, and there was no necessity for an order of publication, report or confirmation. 4. The second sale was, in all respects, regular, and the court ordered the execution of a deed, conveying *all the right, title and interest* which the decedent had in the Mine La Motte tract, at the time of his death. This order is broad enough to cover the interest attempted to be conveyed by the first sale, if that sale was void. 5. A part of the money arising from the sale under the order of 1838, was applied to the payment of the amounts decreed to Brown and Valle in the chancery suits, to which plaintiffs were parties, in exoneration of that part of the estate remaining unsold. This was a

waiver on the part of the heirs of any irregularity in the proceedings. 2 Sand. Ch. Rep. 341.

SCOTT, Judge, delivered the opinion of the court.

The validity of the proceedings which resulted in the sale of the land in controversy has been placed on two grounds; the first of which is, that the sale was valid under the 8th and the following sections of the 3d article of the act respecting executors and administrators of the Revised Code of 1835, which authorized a sale of the lands of a deceased person to pay his debts, when there was an insufficiency of personal estate. The second ground was put on the 2d and 3d sections of the same article, which prescribed that, when any person should die, after having purchased any real estate, and should not have completed the payment, should it be believed that, after the payment of debts, there would not be sufficient assets to pay for such real estate, the executor or administrator should, by order of the county court, sell all the right, title and interest of the deceased therein.

1. An objection to the sale, when its legality is based on the first ground stated, is, that the requisite notice was not given to those interested to come in and show cause why the sale should not be made. The law required that the application should be made at one term for the sale, and that six weeks' notice of it should be given by publication in a newspaper. At the next term after such notice, upon proof of the publication of it, the court was required to hear the testimony, and dispose of the application. It is contended that this notice is not necessary to give validity to the proceedings; that the court having jurisdiction of the subject, the failure to give notice does not render its order of sale void; that the presumption of notice arises from the fact of the order having been made, and at most, an omission to give it would only affect the proceedings with error, which would not avoid a sale under them. It is certainly true, that the county courts have no other jurisdiction than that which is specially conferred on them by statute.

They have no common law jurisdiction, nor can they be said to be courts of general jurisdiction, in whose favor, by the common law, the liberal intendments are indulged, which are extended to courts of that character. But the great mischief which, experience has shown, arises from avoiding sales made under the authority of tribunals having jurisdiction of the subject, have induced courts to extend an enlarged liberality of construction to proceedings instituted for such purpose, with a view to uphold them. As to these proceedings, the presumption extended to courts of general jurisdiction is indulged. No case is more frequently cited, in connection with this subject, than that of *Grignon* v. *Astor*, 2 Howard, 319. There, the Supreme Court of the United States went a great way to uphold judicial sales of real estate. Those proceedings were under a statute resembling ours. Notice of the application for the sale of the real estate by an administrator was required by law. It did not appear that the notice had been given. The opinion says, after the court has passed on the representation of the administrator, the law presumes it was accompanied by the certificate of the judge of probate, as that was requisite to the action of the court. The order of sale is evidence of that or any fact which was necessary to give the power to make it, and the same remark applies to the order to give notice to the parties. In the case before the court, the record shows that it was impossible that the notice required by law could have been given. The order of sale was made but two days after the letters of administration were granted. The court, at the term at which the sale was ordered, could not, by law, act on the matter; a sale could only have been directed at a term subsequent to the application for it. How, then, can a notice be presumed, when the record shows, on its face, that it was impossible, in the nature of things, that it could have been given? There is great difficulty in maintaining that a party is bound by an irregular proceeding, because he did not appeal from it, when the very objection is, that he had no notice, which would have enabled him to be present to take his appeal, and the ap-

Valle v. Fleming.

peal by law could have been only taken at the term during which the order of sale was made. There is no writ of error allowed in such cases. The case of *Snyder* v. *Markel*, 8 Watts, 416, which is relied on by the defendants, and was also used as an authority in the case of *Grignon* v. *Astor*, above cited, maintains that the regularity of the proceedings for an administrator's sale of land of his intestate, cannot be impeached collaterally ; that the remedy is an appeal for the correction of errors in them. How could there have been an appeal in such a case as the present ? *Smith* v. *Rice*, 11 Mass. 507. This is an infirmity attached to these proceedings, which is apparent upon the face of the record, and no length of time can cure it. If the antiquity of the proceedings were such, (and it is not,) as to warrant the application of the maxim *ex diuturnitate temporis omnia praesumuntur rite et solenniter esse acta,* yet it could have no place here, as the defect in the proceedings is apparent on the record. In the case of *Grignon* v. *Astor*, it did not appear but that the notice was given, and as the proceedings had transpired a great length of time before they were assailed, the maxim above cited might have exerted an influence in its determination. But unfortunately, this case is so circumstanced as to be beyond its operation. If we admit that the purchaser is not bound to look behind the order of sale, under which he derives his title, yet the order here shows that it was made at a term at which no possible state of circumstances would authorize it, in the absence of those interested. The order of sale immediately follows the presentation of the application, when the statute required that it should be made at the next succeeding term of the court, after proof of the publication of six weeks' notice of the application in a newspaper.

2. Another objection to the validity of the proceedings is, that they want the approval of the court. The statute required that, at the next term of the county court after a sale, the administrator should make a full report of his proceedings, and enacted that, if such report of the administrator be not appro-

ved by the court, his proceedings should be void, and the court should order a new sale; if the report be approved by the court, such sale should be valid, and the administrator, upon the payment of the purchase money, should make to the purchaser a deed, conveying all the right, title and interest which the deceased had in the real estate sold. This objection is not affected by the principle, that a fair purchaser at a sale shall not be affected by any subsequent irregularity of the officer conducting it, as there could be no valid sale until there was a report and confirmation of it. In looking over the cases on administration sales of real estate, a provision like that above cited has not been found. It must have been intended to have some effect. So far as the court was concerned, the approval would seem to be the crowning act of the sale. That approval could only appear by the record, as it is an act of the court. It is not maintained that it should be *in totidem verbis*, but the sanction of the court to the proceedings should, in some way, appear; otherwise, the sole condition on which the law imparts any validity to them is not complied with. An order directing the administrator to make to the purchaser a deed, would be an implied sanction of his proceedings. The recital of the facts in a subsequent application for the sale of the real estate, which was never acted upon, that the land was sold for $16,666⅔, on a credit, whose duration is not mentioned, to persons not named, whose notes, for the purchase money, were disposed of at a discount not disclosed, and promises a full report thereafter, on no rule or principle can be regarded as any evidence of an approval by the court of the first sale. This application was moreover not made until 1843, upwards of four years from the date of the deed. If an approval after the sale will avail any thing, and one four years thereafter is effectual, no reason is perceived why the sale might not be ratified by an approval at this time. The law evidently contemplates that the deed should not be given, until there is an approval of the report of the proceedings of the administrator. A failure to enter the order of approval might be remedied by an amend-

Valle *v.* Fleming.

ment of the record or by mandamus.   Nor does the application for the sale of land on the 18th September, 1847, furnish any evidence that the first sale was approved.   That application states that a report of the first sale had been made, but it nowhere appears, but as stated in the application made in 1843. The deed itself furnishes no evidence of the approval of the proceedings of the administrators by the county court.   That deed is not in conformity to the statute, such as the court was required by law to direct the administrators to make.   It did not convey to the purchaser all the right, title and interest which the deceased had in the real estate, but the administrators, as such, convey the land itself, just as the other joint owners conveyed it, joining in a deed with them, and as administrators, they warrant the title.   The case requires no expression of opinion as to this deed, otherwise than as affording no evidence that the court approved the sale, as the deed is not such a one as the court was directed to order to be made to the purchaser.   We do not say that, if there had been a report and a deed, in conformity to law, following it, that the approval of the court might have been presumed, on the maxim *probatis extremis præsumuntur media*.   The approval of the court should have been a matter of record, and it should have been shown by the record.

3. It is impossible, from an examination of this transcript, to say that the sale is valid, on the second ground on which its validity is attempted to be upheld, stated in a preceding part of this opinion.   If an order of sale, under the sections referred to, had been contemplated, it would have been for the sale of all the right, title and interest of the deceased in the tract of land purchased, whereas, the order was for the sale of the whole or so much of the real estate as shall be necessary to pay the debts of the deceased.   Had the sale been under these sections, no appraisement would have been required, nor would there have been any necessity for a petition ; yet we find both of these among the papers in the cause.   It is not pretended that, had the sale taken place under these sections, that

the appraisement or petition would have affected its validity. The petition was not so worded as to accomplish any such result as was designed by these sections, nor does the deed itself show that such a purpose was intended. The act that was done by the court could only have been performed under the 8th and following sections of the 3d article of the act, and the order made shows that the court never intended to act under the second and third sections. If a proceeding is had under one provision of law, and it turns out to be invalid, can it be upheld on the ground that it might have taken place under provisions which would avoid the objections taken to its validity? The argument cannot be that the second and third sections upheld the proceeding, but that it might have taken place under them, for it is obvious that the end contemplated by these sections was not accomplished by the proceeding which did occur.

It is a matter of regret that purchasers should lose their estates, by reason of irregularities in the proceedings of those entrusted with the execution of the law. This sale bears intrinsic evidence of its fairness. Not the least blame can be imputed to the purchaser. He has been deceived by relying on the opinion of those, who, though incompetent to advise, yet were, no doubt, conscientious in the views they expressed. These considerations cannot affect the law of the case. To uphold this sale, would repeal every restriction which the law has imposed with a view to prevent unnecessary sales of the real estate of deceased persons. It is obvious that no validity can be imparted to this sale, by reason of any of the proceedings in the suits by R. T. Brown and others against the plaintiffs; the fact that they were minors, even if any thing was therein contained to affect them, would prevent such a consequence.

4. There was no irregularity affecting the last sale sufficient to invalidate it. The first administration either continued or it was replaced by the second. If it continued, the association of the name of Melanie Valle with that of the real administrator, who, it is assumed, was alone competent to act, would

not prejudice the proceedings. If the second grant of letters was valid, the sale was equally good.

Judge Ryland concurring, the judgment is reversed, and the cause remanded; Judge Gamble not sitting.