# Fisher *versus* Kurtz.

The sale of the real estate of a decedent, by his executor, for the payment of debts under a power contained in the will, does not divest the lien of a judgment entered in the lifetime of the testator.

A sale by an executor under a testamentary power, is not a *judicial sale.*

ERROR to the District Court of *Philadelphia.*

Amicable action of *assumpsit* and case stated for the opinion of the court.

The following facts are agreed upon by the counsel for the plaintiffs and defendant, as a case stated for the opinion of the court.

It is agreed that Theobald Stœckel, in his lifetime, was seised and possessed in his own right, in fee simple of a house and lot of ground, and buildings thereon erected, at the north-east corner of Laurel and Budd streets, in the said city; purchased by him in the year 1837; and that he died on or about the first day of January, A. D. 1856; having first made and published his last will and testament, which was duly admitted to probate on the 7th day of that month, and letters testamentary in due form of law were issued to the present plaintiffs; that by said last will and testament, after having specifically devised three properties particularly described to his three children, there is a power given to his executors in these words, "*Item;* I hereby authorize and empower my executors, hereinafter named, to sell all the rest and residue of my real estate, or so much thereof as shall be neces-

[Fisher *v.* Kurtz.]

sary for that purpose, for the payment of my just debts; and I desire them to sell as speedily as they can, sufficient to get money to pay up in full my shares in various building associations, in said city, where they hold mortgages on my property, as by so doing, the said real estate will be released; and also in payment of a mortgage. I have given to a trustee for the use and benefit of my wife Henrietta, on her releasing her right of dower, of and in all my estate, whether real or personal, as I desire the mortgages on the property given to each of my said three children, to be paid off as speedily as possible, and therefore appropriate all my other property not before specifically devised for the payment of my debts, but hereby giving unto my said executors, power to sell and convey any of the real estate, if necessary, for the payment of my debts and funeral expenses." And it is agreed, as part of the facts in this case, that the said property at the corner of Laurel and Budd streets, above mentioned, is a part of the *rest* and *residue* of the real estate, and not any which was specifically devised; that the said executors caused this with other properties which belonged to said testator to be advertised for sale at public auction, by M. Thomas & Sons, at the Philadelphia Exchange, on the 1st day of April, 1856; when the property above described was sold to John Kurtz, the defendant, for the sum of $800 (subject to a yearly ground-rent of $34), and that said John Kurtz paid on his bid $50, in cash, and signed the conditions of sale, which were that the terms were cash, to be paid in ten days from the sale. That immediately after the said sale, the title papers to said property were furnished to the counsel of the defendant, who pronounced the chain of title good. That by the mutual understanding between the parties, there was some delay in getting the title papers prepared, and in procuring the searches in order to make it complete, but on the 16th day of July, 1856, the said executors tendered to the said defendant a good and sufficient deed for the premises.

It is also admitted, that when the said deed was so tendered, there were, and are still, two mortgages on said premises, on which there is a balance due, on both, of about $425, and that the mortgagees met with the executors and said defendant, and offered to enter satisfaction on the record of said mortgages on the money being paid by him.

And it is agreed, also, that there are unsatisfied judgments in the said District Court, for said city and county, and in the Supreme Court for the Eastern District of Pennsylvania, entered against said Theobald Stœckel, in his lifetime, since March 1st, 1854, to the amount of $5000 and upwards; and that the said executors, when said deed was tendered, offered and proposed that the said defendant should pay the balance of the purchase-money, over and above the satisfaction of said mortgages, directly

[Fisher *v*. Kurtz.]

to the counsel of the oldest judgment-creditor, in part payment of said judgment; or if he did not desire to be to that trouble, then pay it to the said executors, and they would apply it at once in payment of the oldest judgment-creditors; but the said defendant refused to accept the deed and pay the money, unless the said executors would give him a bond to indemnify and save him harmless from the judgments entered against the deceased in his lifetime.

It is now agreed between the parties, that should the court be of the opinion, that under said sale by the executors on this statement of facts, the said defendants would hold the said property discharged of the lien of said judgments, on payment of the balance due to the oldest judgment-creditor, and that the said purchaser was not bound to look to the appropriation of the money which remained after satisfying said mortgages, then judgment to be entered in favour of the plaintiffs for $750; if otherwise, then in favour of the defendant, with liberty for either party to take a writ of error to the Supreme Court, within twenty days after judgment. A copy of said will and the deed tendered, are to be considered a part of the case stated, if either party desire to read them to the court.

And it is further agreed, that the search certificates of the District Court for the city and county of Philadelphia, and of the Supreme Court for the Eastern District of Pennsylvania, stating in short the amounts of the judgments against said Theobald Stœckel, and the times when entered, and the terms and numbers and names of the holders thereof, may be read or offered in evidence by both or either party, with the same effect as if regular certificates or exemplifications of said judgments had been obtained and offered or produced in the case, and shall be taken and considered as part of the case stated.

The court below entered judgment on the case stated in favour of the defendant.

The plaintiffs took this writ and assigned for error, that the court below erred in entering judgment on the case stated for the defendant.

*Parsons*, for plaintiffs in error.

*Love*, for defendant in error.

The opinion of the court was delivered by

KNOX, J.—This record presents but one question, Does a sale by an executor under a power given by will for the payment of debts, divest the lien of a judgment entered against the testator in his lifetime from the real estate sold?

That a judicial sale of real estate, whether made upon an exe-

[Fisher *v.* Kurtz.]

cution issued by the Court of Common Pleas, or upon an order of the Orphans' Court to the executor or the administrator to pay debts, divests the lien of all judgments and of all mortgages not protected by the Act of 1830, is a principle long since settled. It is also well settled that a sale of real estate under a testamentary power to sell for the purpose of paying debts, discharges the estate in the hands of the purchaser from the general or unscheduled debts of the testator.

Whether such sale would discharge a judgment obtained against an executor or administrator, unless the proceeds were paid into the Orphans' Court under the provision of the 19th section of the Act of 24th February, 1834, is perhaps not yet judicially determined.

I am not aware that it has ever been decided in terms by this court that a sale by an executor under a power given in a will, would not discharge real estate from a lien entered in the lifetime of the testator.

I am certain the contrary has never been decided, and I apprehend the reason why it has not been held that such a sale would not affect liens obtained in the lifetime of the decedent, is, that the point has always heretofore been a conceded one.

It was admitted by Chief Justice McKean and Justice Yeates in Hannam *et al. v.* Spear, 2 *Dall.* 291, 1 *Yeates* 553, by Justice Duncan in Grant *v.* Hook, 13 *S. & R.* 259, by Rogers, J., in Mitchell *v.* Mitchell, 8 *Barr* 126, and by Judge Bell in Cadbury *v.* Duval, 10 *Barr* 265, that a sale under a testamentary power would not discharge the lien of judgments or mortgages obtained before the death of the testator. Such a sale is in no respect a judicial one. It is in virtue solely of a private power ; and although the purchaser may pay the purchase-money into the Orphans' Court having jurisdiction over the accounts of the executor, yet his doing so will only protect him against "all persons having or who may have an interest therein." This provision does not help the plaintiff in error, for unless the lien of a judgment is discharged by the sale, the judgment-creditor has no interest in the proceeds of sale, and consequently the purchaser is not, by the payment of the purchase-money into the Orphans' Court, protected against the claim of the judgment-creditor. The construction given by Mr. Justice Bell to the 19th section of the Act of 1834 in Cadbury *v.* Duval, is doubtless the correct one ; that it applies only to scheduled debts, which the purchaser being bound to notice, might be required to see that the purchase-money was applied to. To relieve him from this difficulty, he was authorized by the act aforesaid to pay the purchase-money into the Orphans' Court, where the rights of the creditors would be protected by a proper and legal distribution of the fund. We think the question in the case at bar is free from difficulty. The lien of a judgment

obtained against the real estate of a decedent in his lifetime, can only be discharged by payment or by a judicial sale of such real estate. An executor's sale under a testamentary power is not a judicial sale, and does not divest the lien of a judgment which had attached anterior to the testator's death.

Judgment affirmed.