## State College Borough v. Leathers et al.

*Newton B. Spangler*, for plaintiff; *Rufus C. Elder*, for defendants.

FLEMING, P. J., May 17, 1933.—This matter is before the court in the nature of a case stated. The facts are as follows:

By deed dated April 13, 1926, recorded in Centre County, in Deed Book, vol. 136, at page 76, D. Harvey Pontius and Minnie H. Pontius, his wife, conveyed parts of lots nos. 50 and 51, in the plot or plan of Beaver Lawn Addition to State College Borough, to Rebecca H. Leathers. On June 4, 1926, the Borough of State College filed its municipal lien in the Court of Common Pleas of Centre County, to No. 32, September Term, 1926, against the said Rebecca H. Leathers, in the sum of $260.76, with interest from December 21, 1925, the premises described therein being the premises in the deed from Pontius and the basis of the lien being an assessment for the installation and construction of a sewer on the street adjacent thereto.

On September 4, 1928, a judgment was entered in the Court of Common Pleas of Centre County, to No. 261, September Term, 1928, in favor of C. Z. Bearley and C. W. Bearley, trading as C. Z. Bearley and Son, to the use of the Mifflin County Bank, a corporation, and against Rebecca H. Leathers and A. C. Leathers, in the sum of $9,000, with interest from April 15, 1926, and an attorney's commission of 5 percent. Such judgment was entered upon four mortgage bonds recited in a certain mortgage given by Rebecca H. Leathers and A. C. Leathers, her husband, to C. Z. Bearley & Son and D. Harvey Pontius, dated April 15, 1926, in the sum of $10,000, which mortgage was recorded in Centre County in Mortgage Book, vol. 52, at page 469, and describes the same property as is set forth in the municipal lien above mentioned. Subsequently, by an assignment dated June 17, 1927, and recorded in Centre County in Miscellaneous Book, vol. X, at page 439, the said mortgage and bonds were assigned by the original mortgagees to Mifflin County National Bank, a corporation.

The real estate described in the said mortgage was sold by the Sheriff of Centre County, on the above-stated judgment, in pursuance of fi. fa. No. 77, September Term, 1928, on September 28, 1928, to Mifflin County National Bank for the sum of $1,200. The sheriff applied out of the said purchase money to costs $109.35, to advertising $25.90, to Charles E. Williams, tax collector, $114.40, and the balance of $950.35 was paid to Gettig & Bower, attorneys for the plaintiff in the writ. A subsequent return of the sheriff was made on September 11, 1929, under decree of the court, to the effect that the real estate of the defendants had been sold on September 28, 1928, to Mifflin County National Bank for the sum of $1,200, of which money the sheriff applied $109.35 for costs, $200 on account of attorney's commission, $25.90 for advertising, $114.40 to Charles E. Williams, tax collector, $75 to Minnie K. Pontius, and the sum of $675.35 to Gettig & Bower, attorneys for the plaintiff.

Mifflin County National Bank is still the owner of the premises, and no portion of the sum of $260.76 nor any of the interest due thereon since December 21, 1925, as set forth in the said municipal lien, has been paid by the said Rebecca H. Leathers, nor has the same been paid out of the proceeds of the sale of her real estate above described.

It has been agreed between the several parties that the docket entries and all record papers in the Court of Common Pleas of Centre County relating to the said municipal lien, the issuing of the sci. fa. thereon, the entry of said judgment, the writ of sci. fa. thereon, the sheriff's sale, the returns of the sheriff's writ, the record of the deed in the office of the Recorder of Deeds of Centre County, the record of said mortgage, the assignment thereof, and the sheriff's deed for the said premises, are all hereby made a part of the record, the affidavit of defense being specifically excepted.

By the terms of the stipulations filed, the only question before the court is whether or not the municipal lien as filed was divested by the subsequent sheriff's sale. It has been agreed that if the court shall find that the lien was divested by such sale, judgment shall be entered for defendants, with costs, but that if it shall find that the lien was not divested by such sale, judgment shall be entered for the plaintiff, likewise with costs.

### Discussion

Plaintiff points to and quotes section 3 of the Municipal Lien Act of May 16, 1923, P. L. 207, 53 PS § 2023, as follows:

"All municipal claims which may hereafter be lawfully imposed or assessed on any property in this Commonwealth, and all such claims heretofore lawfully imposed or assessed within six months before the passage of this act and not yet liened, in the manner and to the extent hereinafter set forth, shall be and they are hereby declared to be a lien on said property, together with all charges, expenses, and fees added thereto for failure to pay promptly; and said liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, or estate with which the said property may become charged, or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made, and the taxes imposed or assessed upon said property."

Plaintiff further points to and quotes the pertinent part of section 31 of said act (53 PS § 2051) as follows:

"The lien of a tax or a municipal claim shall not be divested by any judicial sale of the property liened, where the amount due is indefinite or undetermined, or where the same is not due and payable; nor shall the lien of a tax or municipal claim be divested by any judicial sale of the property liened, as respects so much thereof as the proceeds of such sale may be insufficient to discharge; nor, except as hereinafter provided, shall a judicial sale of the property liened, under a judgment obtained on a tax or municipal claim, discharge the lien of any other tax or municipal claim than that upon which said sale is had, except to the extent that the proceeds realized are sufficient for its payment, after paying the costs and expenses of the sale, and of the writ upon which it was made, and any other prior tax or municipal claims to which the fund may first be applicable. On any such sale being made all tax claims shall be paid out of the proceeds thereof: first, the oldest tax having priority; and municipal claims shall be paid next, the oldest in point of lien having priority. Mortgages, ground-rents, and other charges on or estates in the property which were recorded, or created where recording is not required, before any tax other than for the current year accrue, or before the actual doing of the work in front of

or upon the particular property for which the municipal claim is filed, shall not be disturbed by such sale unless a prior lien is also discharged thereby."

Plaintiff raises no question as to the amount of the municipal lien in question being definite and determined, nor does it dispute the fact that such lien was due and payable at the time of the sheriff's sale. Neither does it contend that the proceeds of the sale were insufficient to pay the lien or any part thereof, or that any other of the terms and conditions expressed in the last-recited section of the act applies to protect the lien in the instant case. In short, the plaintiff admits that, if the sheriff's sale was a judicial sale, the lien would be divested and judgment therefore should be entered for the defendant. But the plaintiff contends that the sheriff's sale was not a judicial sale but was, as it calls it, merely an "execution" sale, that the provisions for the divestiture of liens by judicial sales do not apply, and that, the lien not being divested by an "execution" sale, judgment should be entered for the plaintiff.

The determination of the issue therefore resolves itself into a determination of the nature and character of the sale under which the sheriff proceeded to sell the property in question to Mifflin County National Bank. Is there a distinction in Pennsylvania between "judicial" sales and "execution" sales? If so, what is or are the distinguishing characteristic or characteristics? How do these characteristics, if any, apply to the sale held by the sheriff in the instant case?

After a careful search, we have been unable to find any instances where our courts have seen fit to draw such a distinction as the plaintiff seeks to draw in the instant case. The question has always been whether or not a particular sale was a judicial sale, and the niceties of distinction between a judicial sale and an execution sale, as they are expressed in the texts and in the decisions of other jurisdictions, do not seem to have concerned the appellate courts in this State.

In City of New Castle v. Whaley's Heirs et al., 102 Pa. Superior Ct. 492, where the facts were that the owner of a certain property died and devised the property to his widow for her life, and directed that after her death the land should be sold and distributed, it appeared that prior to the death of the wife a municipal claim was filed, and judgment was entered against the heirs of the deceased and his widow. Subsequently the widow died, and an administrator d. b. n. c. t. a. was appointed for the husband's estate, and the powers and duties of the executor were extended to him. The husband had failed to give sufficient power to his executor to make sale of the real estate, and the administrator d. b. n. c. t. a. presented his petition to the orphans' court asking for authority to make public sale of it. The authority was granted, and the property was sold for a sum sufficient to pay the costs and the municipal liens. The sale was duly confirmed by the court and the deed delivered. The city had no actual notice of the sale, and its lien was not paid from the proceeds thereof. The purchaser of the property from the administrator sold it to one of the defendants, and thereafter the city filed a præcipe for a sci. fa. to continue the municipal lien. The court, in holding that a sale of real estate under the provisions of section 28 of the Fiduciaries Act of June 7, 1917, P. L. 447, is a judicial sale, speaking through Judge Baldrige, says (p. 496):

"A judicial sale is defined by Rapalje and Lawrence, Vol. 1, Page 699, as 'a sale under the judgment, order, or decree of the court; a sale under judicial authority, by an officer legally authorized for the purpose, such as a sheriff's sale, an administrator's sale, etc.' Bouvier, Vol. 2, Page 1754, Rawle's Third Edition, gives as a definition: 'A sale, by authority of some competent tribunal, by an officer authorized by law for the purpose. The term includes sales by

sheriffs, marshals, masters, commissioners, or by trustees, executors, or administrators, where the latter sell under the decree of a court.' It has been said by our Supreme Court that sales by order of the orphans' court are judicial sales: Dixcy's Exrs. v. Laning and Sill, 49 Pa. 143, 146. A sale under orphans' court proceedings in partition is a judicial sale (Girard Life Ins. Co. v. Farmers' and Mechanics' Bank, 57 Pa. 388, 394), as is a sale by an administrator for the payment of debts: Vandever v. Baker, 13 Pa. 121, 126; Dixcy's Exrs. v. Laning, supra. On the other hand, a foreclosure sale by a trustee of a mortgage is not a judicial sale (Com. v. Keystone Graphite Co., 248 Pa. 344), nor is a sale under a testamentary power: Fisher v. Kurtz, 28 Pa. 47, 49."

In American Finance Co. v. Trachtman et al., 103 Pa. Superior Ct. 289, 293, Judge Keller says:

"The claimant's petition [this was a sheriff's interpleader proceeding] warrants the construction that his title to certain of the goods levied upon by the sheriff and claimed by him, to wit, a cash register and slicing machine, had been obtained through the defendant in the execution; that they had been levied on and sold as the defendant's property by a constable by virtue of a distress for rent for the premises now occupied by the claimant, and had been bought by the claimant from the respective purchasers at said sale. There are some lower court decisions under the act and practice in force prior to 1897, which hold that the title to property purchased at a judicial sale was not obtained by, from or through the defendant in the execution. But a constable's sale under a distraint for rent is not a judicial sale: New Castle v. Whaley, 102 Pa. Superior Ct. 492, 496. It is not ordered by or held under any process issuing from a court, nor is it returned to or confirmed by a court. It is a proceeding authorized by law to enable a landlord to collect his rent by a sale of goods on the demised premises; and a purchaser of a tenant's goods sold at such a sale obtains his title through or from the tenant."

In 16 R. C. L. 6, sec. 2, which embodies the exact thought expressed by the textwriters and decisions of jurisdictions wherein the distinction between "execution" sales and "judicial" sales is clearly marked as such, we find:

"The term 'sale' is a word of precise legal import, both at law and in equity. It means, at all times, a contract between parties to give and to pass rights of property for money which the buyer pays or promises to pay to the seller for the thing bought and sold. Precisely what may accurately be denominated a 'judicial' sale is not very well settled. However, it may be generally defined as one made under the process of a court of competent authority by an officer legally appointed and commissioned to sell, the court being the vendor while the officer appointed to sell is a mere ministerial agent. And there are certain well defined tests to which it must conform. First of all, it must be the result of judicial proceedings. It must be based too upon a judicial order, decree or judgment directing that the property be sold as distinguished from a judicial assent to the sale of property under statutory provisions. Furthermore, it must be made by the court or by its direction upon the terms and rules provided by the decree or order, not according to the provisions of a statute. And a departure by the officer making the sale from the terms prescribed therefor may render it non-judicial."

Before discussing the foregoing authorities, which appear to be the last expressions, both within and without this jurisdiction, in an endeavor to ascertain just what are the essentials of a judicial sale, let us review briefly the facts in the case before us as they admittedly appear.

The judgment entered, upon which the writ of fi. fa. was issued, was obtained by the exercise of a warrant of attorney contained within the instrument itself.

The judgment was entered in this court, and the instrument supporting the same has become a part of the records thereof. The warrant of attorney, while presumed to be valid, was always subject to a review by this court had proper exceptions been raised. The judgment itself was subject to the action of this court in respect to striking the same from the record had irregularities upon the face of the record been shown, or in respect to the opening of the same had proper reasons been advanced to merit the same. The fi. fa. was attested by the court and issued out of the office of its clerk, the prothonotary of this county. It was under the control of the court to the extent that, upon proper cause shown, it could have been stayed by the court. The writ was a command to the sheriff to do a ministerial act and left no discretion to him of any sort other than as to the specific time, within the maximum period prescribed by the court, when the actual execution of the writ should take place. The procedure to be followed by the sheriff was at all time subject to the review of the court, and it was within the power of the court, upon proper cause shown, to set aside the sale of the sheriff. His return and the report of his distribution of the proceeds of the sale were required by the court, and the plaintiff was accorded the right of exception thereto, which exceptions, if filed, would have been heard and disposed of by the court.

Judge Baldrige, in New Castle v. Whaley, supra, adopting the definition of Rapalje and Lawrence, vol. 1, page 699, defines a judicial sale as "a sale under a judgment, order, or decree of the court". The sale, in the instant case, was upon a judgment particularly designated as a judgment of this court. Further, it was a sale "under judicial authority", as we have shown, and was "by an officer legally authorized for the purpose", to wit, the sheriff of the county. It was "a sale, by authority of some competent tribunal."

That a sale under a distress for rent is not a judicial sale is well established, and it needs no discussion to prove the same. But it cannot be an execution sale, for it has been often held that a landlord's warrant is not an execution. We must conclude therefore that, at least for the purpose of this discussion, sales are to be classified as judicial sales and nonjudicial sales.

In American Finance Co. v. Trachtman et al., supra, another distinguishing feature between judicial and nonjudicial sales is expressed. Judge Keller says: "and a purchaser of a tenant's goods sold at such a sale [a sale upon a landlord's warrant] obtains his title through or from the tenant." In the instant case, the title obtained by the purchaser was obtained from the court, through its ministerial agent, the sheriff, who made, executed, acknowledged, and delivered to such purchaser his deed, as a ministerial agent of the court. The defendant in the execution had no part in the transfer of title. Such defendant's property was seized by virtue of the execution, attested by the court and under its control at all times, and was sold and title thereto transferred by the authority of the court.

In Commonwealth v. Keystone Graphite Company, 248 Pa. 344, wherein it was held that a foreclosure sale by a trustee of a mortgage is not a judicial sale, we find characteristics markedly distinguishing it from the case at bar. Therein the right to sell was contained in the instrument itself and was in nowise controlled or regulated by any court, the instrument providing as follows:

"If any default shall be made by the company in payment of the principal or in interest of said bonds, or any of them when due, according to the tenor thereof, and of this indenture or if said company shall fail to make the yearly payment to the sinking fund required by Section 12 of this indenture, or shall fail faithfully to observe and perform any of the requirements imposed upon

it by said bonds and coupons, or by this indenture, and such default or failure shall continue for the period of six months after written notice thereof has been given by the trustee or its successors to the company, then and thereupon it shall and may be lawful for the trustee or its successors, upon, the written request of the holders of not less than 60 per centum in amount of the bonds then outstanding and unpaid, to proceed to sell at public auction unto the highest bidder all and singular the property real and personal, rights and franchises and privileges hereby conveyed, transferred, set over or pledged or intended so to be, that shall then be subject to the lien, operation and effect of this indenture, and pledged with the appurtenances and benefits of the equity and redemption of the company, its successors or assigns therein."

The instrument continued to recite the manner and term of notice to be given by the trustee of such sale and then continued to say:

"and the trustee or its successors without further advertising such sale made by announcement made at the time and place fixed by publication, or at an adjourned sale from time to time for such period or periods as may be advisable and upon such sale and receiving the purchase-money therefor, it shall be lawful for the trustee or its successors to convey, assign, transfer and set over the property real or personal rights, franchises and privileges so sold the purchaser or purchasers thereof and such sale and conveyance, transfer or assignments shall convey, transfer or assign all the right, title, estate, property and interest of the company of, in and to the said property real and personal, rights, franchises and privileges to the purchaser or purchasers thereof absolutely and forever, free, clear and discharged of and from any and all the provisions and conditions hereby created without liability on the part of the purchaser or purchasers to see to the application or disposition of the purchase-money, and shall be a perpetual bar, both in law and equity against the company, its successors and against all and every person claiming or to claim the same or any part thereof under it forever. . . ."

It is easily understood why such a sale was held to be a nonjudicial sale. It was the result of a desire to adopt "a more flexible method of foreclosure" for corporation mortgages which brought about the sale had in the last cited case.

In Bruckman Lumber Co., to use, v. Pittsburgh Insurance Co. et al., 307 Pa. 561, 564, which was a case involving a corporate mortgage and a sale thereunder parallel to that in Commonwealth v. Keystone Graphite Company, supra, Mr. Justice Linn, in maintaining the rule laid down in this last cited case, says, in part, as follows:

"It is unnecessary for present purposes to consider whether this mortgage or deed of trust created an estate or a lien (cf. Harper v. Consolidated Rubber Co., 284 Pa. 444, 451, 131 A. 356). For more than 150 years the Act of 1705 and supplements had provided a satisfactory and expeditious method of foreclosing mortgages by proceeding by scire facias, etc. With the growth of the modern corporation mortgage, it was found that a more flexible method of foreclosure was desirable and that the proceeding at law was inadequate or inconvenient for the disposition of the complex questions frequently presented in the foreclosure of such mortgages."

We have thus dwelt at length upon this latter question in order to show clearly that the rule expressed in Commonwealth v. Keystone Graphite Company, supra, does not apply to an ordinary mortgage, as in the instant case, wherein scire facias proceedings must be had to foreclose. It cannot be argued that, because the judgment upon which the sheriff's sale was had in the case before us was entered upon a mortgage bond, it was, in effect, a mortgage foreclosure, and that the rule expressed in Commonwealth v. Keystone Graphite

Company, supra, can be invoked to hold such sale to be a nonjudicial sale. The facts are widely at variance, as we have shown.

### Conclusion

Therefore, for reasons stated above, and after a careful consideration of the arguments and briefs of the learned counsel for all parties, we conclude:

1. That the sheriff's sale wherein the property in question was sold to Mifflin County National Bank, defendant herein, was a judicial sale.

2. That the lien of the plaintiff, The Borough of State College, was divested by such judicial sale and that, according to the stipulation filed herein, judgment should be entered for the defendants, with costs.

We, therefore, enter the following

### Decree

And now, May 17, 1933, after a consideration of the whole record, judgment is directed to be entered for the defendants, with costs, as stipulated in the stipulation filed in this case.

From Musser W. Gettig, Bellefonte, Pa.